IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT LEWIS MEESE,

        Plaintiff,

v.                                                                                No. 1:17-cv-00140-KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff Robert Lewis Meese seeks review of the Commissioner's determination that he is not entitled to disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has considered Mr. Meese's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed October 16, 2017 (Doc. 22), the Commissioner's response in opposition, filed November 16, 2017 (Doc. 24), and Mr. Meese's reply, filed November 24, 2017 (Doc. 25), along with the remainder of the record. Having so considered, the Court **FINDS and CONCLUDES** that Mr. Meese's motion is well taken and should be granted.

## PROCEDURAL BACKGROUND

On October 17, 2012 Mr. Meese filed an application for Supplemental Security Income (SSI) benefits, alleging that he had been disabled since September 1, 2012, due to depression, anxiety, PTSD, and a history of traumatic brain injury with cognitive impairment. (AR 275). On

March 7, 2013, it was determined that Mr. Meese was not disabled and his claim was denied. (AR 115-126). The denial was upheld on reconsideration on August 6, 2013 (AR 127-140), and a subsequent hearing before an administrative law judge ("ALJ"), held on July 2, 2015, again ended in a denial. (AR 12-21). The ALJ's decision became final when, on December 21, 2016, the Appeals Council denied Mr. Meese's request for review. (AR 1-5); *see Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Appeals Council denies a request for a review, the ALJ's opinion becomes the final decision); *see also* 20 C.F.R. § 404.900(a)(1)-(5).

## STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Mr. Meese's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## ANALYSIS

### I. Disability Framework.

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act further adds that for the purposes of § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140(1987). At the first four steps of the process, the claimant must show that he or she: (1) is not engaged in "substantial gainful activity"; (2) has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) has impairment(s) that either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) is unable to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4) (i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If a claimant does not establish an impairment that meets or equals a Listing, but proves an inability to perform his or her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other

work in the national economy, considering claimant's residual functional capacity ("RFC")[1], age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**II. The ALJ's Determination**.

As detailed in the ALJ's written decision, the ALJ followed the sequential analysis set forth above, first finding that Mr. Meese had not engaged in substantial gainful activity since his alleged onset date of September 1, 2012. (AR 14). At step two, the ALJ found that Mr. Meese had the following severe medically determinable impairments: post-traumatic stress disorder ("PTSD"), depressive disorder, borderline intellectual functioning and organic brain syndrome.[2] (*Id.*) At step three, the ALJ determined that none of Mr. Meese's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR. 15). Because none of Plaintiff's impairments met or medically equaled a Listing, at step four the ALJ proceeded to assess Mr. Meese's Residual Functional Capacity ("RFC"). (AR. 16-19). The ALJ reasoned:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: He is able to understand, remember and carry out only simple instructions including commensurate work-related decisions. He may have occasional interaction with the public, deal with routine changes in work setting and maintain concentration, persistence and pace for two hours at a time with normal breaks.

(AR 16).

---

[1] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). See also 20 C.F.R. § 404.1545(a)(1).
[2] The ALJ also found that there was evidence Mr. Meese suffered from "hepatitis C and complaints of headaches, but physical examinations (of Mr. Meese) are normal and there is no indication those conditions cause any more than minimal impact on functionality". (*Id.*) The ALJ found the impairments of hepatitis C and headaches non-severe. (*Id.*). Lastly, the ALJ found "Polysubstance dependence also appears in the record, but after several months of sobriety/remission, the claimant's mental impairments are consistent, indicating that substance use was immaterial and not a severe impairment itself." (*Id.*)

At step five, the ALJ determined that Mr. Meese was capable of performing past relevant work as a hand packager and a warehouse worker. (AR. 20) The ALJ also made the alternative finding that other jobs exist in the national economy that Mr. Meese is able to perform, including harvest worker, janitor and meat trimmer. (AR. 20-21) The ALJ then concluded that Mr. Meese has not been under a disability since October 17, 2012 when Mr. Meese filed his application for SSI benefits. (AR. 21)

### III. Mr. Meese's Challenges to the ALJ's Determination.

Mr. Meese bases his request for reversal and remand on contentions that the ALJ erred by failing to consider properly opinion evidence from the State agency consultants in violation of 20 C.F.R. § 416.927 and Social Security Rulings (SSR) 96-6p and 96-8p. Specifically, Mr. Meese contends the ALJ failed to adequately explain why he rejected some of the findings from consultative examiner John Owen, Ph.D., and from the non-examining consultants, Charles Mellon, M.D. and Charles F. Bridges, Ph.D., which, if properly analyzed, would have resulted in a more restrictive RFC.

### IV. Discussion.

ALJs must consider the findings of State agency medical and psychological consultants, other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(b)-(f); 416.927(b)-(f). Although the ALJ is not required to discuss every piece of evidence, when fashioning a claimant's RFC, the ALJ must discuss the weight assigned to each medical source opinion and why the particular weight was assigned. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion

on (a specific) functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at 5; *Keyes-Zachary*, 695 F.3d at 1161.

Two Tenth Circuit Court of Appeals two cases are of particular importance in reviewing the ALJ's treatment of opinion evidence in this case. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with (the CE's) opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of (the CE's) restrictions but not others." *Id*. The court, therefore, remanded "so that the ALJ (could) explain the evidentiary support for his RFC determination." *Id*. Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

**A. The ALJ's evaluation of Dr. Owen's findings.**

Dr. Owen evaluated Mr. Meese at the request of the agency on February 28, 2013. Dr. Owen administered a Weschler Adult Intelligence Scale-III (WAIS-III) and a Mini-Mental State Examination (MMSE), and prepared a Medical Source Statement. (AR 447-450). The results of WAIS-III testing revealed borderline intelligence, with a full scale IQ of 70, which is in the 2nd

percentile. (AR 448). Mr. Meese scored 28 out of 30 on the MMSE, due to difficulty with recall. (AR 449). Dr. Owen diagnosed on Axis I polysubstance dependence (unknown whether it is in remission or not), posttraumatic stress disorder, and depressive disorder.[3] (AR 449). On Axis II, Dr. Owen diagnosed borderline intellectual functioning. (*Id.*). Dr. Owen assessed a mild to moderate difficulty in understanding and remembering very short and simple instructions; moderate difficulties in the abilities to carry out instructions, attend and concentrate, work without supervision, interact with co-workers, adapt to changes in the workplace, and use public transportation; a moderate to marked difficulty in the ability to persist at tasks; a marked difficulty in the ability to interact with the public; and a need for assistance in managing funds. (AR 449-50). In assessing Mr. Meese's RFC, the ALJ afforded Dr. Owen "moderate weight." Mr. Meese argues that the ALJ failed to properly consider Dr. Owen's opinion.

As explained above, the ALJ is required to evaluate all medical opinions. 20 C.F.R. §§ 404.1527(b)-(f); 416.927(b)-(f). Generally, a source who has examined the claimant is entitled to more weight than a non-examining source. 20 C.F.R. § 416.927(c)(1). In this case, although the ALJ acknowledged that Dr. Owen is an expert in the field and had personally examined Mr. Meese, the ALJ summarily concluded that "[Dr. Owen's] opinion concerning marked issues with public interaction is insufficiently explained and not corroborated by the remainder of the record." (AR 18). This conclusory statement does not meet the ALJ's obligation to give a sufficient explanation why he was not adopting those findings. Under the agency's regulations,

---

[3] Dr. Owen also noted he reviewed part of an Adult Function report and medical notes from Healthcare from the Homeless in which Mr. Meese reported having chronic headaches and a severe head injury, PTSD from the trauma of being in prison, a history of homelessness and Mr. Meese informed the doctor that he had been terminated from his last work due to missing days. (AR 447-448). Dr. Owen noted Mr. Meese was cooperative during the examination but gave misleading information, especially when talking about his substance abuse. (AR 448) Dr. Owen indicated that Mr. Meese's responses regarding substance abuse were contrary to the medical notes from Healthcare for the Homeless indicating he has a history of polysubstance abuse. (AR 448). Dr. Owen also stated he found it difficult to determine the extent that Mr. Meese's drug use has affected his overlapping symptoms of Anxiety Disorder and Depressive Disorder that are also associated with PTSD. (AR 449).

the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. *See* SSR 96-8p, 1996 WL 374184, at *7.  Moreover, the ALJ fails to mention the evidence in the record that supports the marked limitations on his ability to interact with the public including Dr. Mellon's opinion to that effect as well as Mr. Meese's testimony at the hearing regarding his inability to interact appropriately with other people in work and non-work settings.   Finally, the ALJ ignored Dr. Owens' opinion that Mr. Meese has moderate to marked difficulty in the ability to persist at tasks. (AR 18)*.* In fact, at step three of the sequential process, in discussing Dr. Owens' opinion, the ALJ incorrectly stated that "consultative examiner estimated moderate difficulties" with regard to Mr. Meese's "concentration, persistence or pace[.]" (AR 15).

In sum, the ALJ improperly picked and chose between Dr. Owens' opinions without sufficient explanation as to the evidentiary basis for doing so. The failure by the ALJ to appropriately address Dr. Owens' opinion when fashioning Mr. Meese's RFC requires that the ALJ's decision be reversed, and that the matter be remanded for further proceedings.

**B**. **The ALJ's evaluation of Dr. Mellon's findings.**

At the initial level of review, non-examining consultant Charles Mellon, M.D. provided an assessment of Mr. Meese's mental abilities. (AR 119-124).  Dr. Mellon noted severe impairments of affective disorders, anxiety disorders, and organic brain syndrome. (AR 119). Dr. Mellon found a moderate restriction in activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (AR 120). Dr. Mellon also reviewed Dr. Mellon's evaluation and noted "CE examiner's findings are

corroborated by the longitudinal evidence in file."  (AR 121). Dr. Mellon assessed the following limitations:

> • Moderately limited in the ability to understand and remember detailed instructions;
> • Moderate limitation in the ability to carry out detailed instructions;
> • Moderately limited in the ability to maintain attention and concentration for extended periods;
> • Moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
> • Moderately limited in the ability to sustain an ordinary routine without special supervision;
> • Moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them;
> • Moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
> • Markedly limited in the ability to interact appropriately with the general public;
> • Moderate limited in the ability to ask questions or request assistance;
> • Moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors;
> • Moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
> • Moderately limited in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
> • Moderately limited in the ability to respond to changes in the work setting; and
> • Moderately limited in the ability to set realistic goals or make plans independently of others.

(AR 122-123).  Mr. Meese argues that the ALJ did not incorporate Dr. Mellon's limitations into his RFC assessment (or the ALJ's hypothetical question to the vocational expert).

The ALJ does not mention Dr. Mellon's opinion explicitly. The only discussion by the ALJ of Dr. Mellon's opinion was to lump the two non-examining consultants, Dr. Mellon and Dr. Bridges together and explain "[a]t the initial state level, medical consultants found no physical impairments and estimated moderate difficulties with daily activities, social interaction and concentration.  Interaction with the public was considered to be the most limited."  (AR 18).

The ALJ's discussion of Dr. Mellon's opinion does not satisfy the requirement to weigh medical opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183; *Keyes–Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). While the ALJ acknowledged the finding that Mr. Meese was "most limited" in interaction with public, the ALJ overlooked Dr. Mellon's determination that Mr. Meese was, indeed, markedly limited in that interaction. Further, the ALJ failed to describe what he meant by the use of the term "most limited," or explain how he was accounting for the "marked limitation" in the RFC assessment. In sum, the ALJ did not indicate the weight he was assigning to Dr. Mellon's opinion, or explain the basis for the weight he might have assigned to Dr. Mellon's opinion.

The Commissioner argues that the "great weight" afforded to Dr. Bridges's opinion, the other non-examining medical consultant, should apply equally to Dr. Mellon. Even had the Commissioner provided authority for that proposition, the ALJ was still obligated to explain why he did not accord great weight to Dr. Mellon's finding of a marked limitation in the interaction with the public, or how he accounted for the marked limitation in his RFC determination. Nonetheless, the Commissioner persists that based upon Dr. Mellon's ultimate conclusion that Mr. Meese could perform simple work limited to concentration for only two hours at a time, the marked limitation in interaction with the general public, the only difference between the assessments of Dr. Melon and Dr. Bridges, who found only moderate limitations, was of no consequence. The Commissioner does not explain how the marked limitation in public interaction would factor into the implied finding of weight or RFC, other than to claim without citation to authority that "[a]s this is in Section I, it does not constitute Dr. Mellon's ultimate

opinion…", intimating that it was not necessary for the ALJ to consider the marked limitation found by Dr. Mellon.

The Court is not persuaded by the "Section I" distinction. The entirety of a medical source opinion constitutes evidence that must be weighed by an ALJ :

> (b) What we mean by "evidence." Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim:
>
> (1) Evidence includes, but is not limited to: . . . (viii) At the administrative law judge and Appeals Council levels, findings, other than the ultimate determination about whether or not you are disabled, made by State agency medical or psychological consultants and other program physicians or psychologists, or other medical specialists, and opinions expressed by medical experts or psychological experts that we consult based on their review of the evidence in your case record.

20 C.F.R. §§ 404.1512(b)(1)(viii); 416.912(b)(1)(viii) (both effective Apr. 20, 2015 through March 26, 2017). Other than for the ultimate conclusion of disability, the regulations make no exception for any portion of the doctor's MRFCA form. *See id*. The regulations do not permit an ALJ to discuss only the portion of the doctor's opinion that the doctor intended to be an RFC assessment. *See id.* Nor do the regulations permit an ALJ to ignore a portion of a doctor's opinion just because the doctor did not intend it to be an RFC assessment. *See id*.

The Commissioner's reliance on *Sullivan v. Colvin*, 519 F. Appx. 985, 989 (10th Cir. 2013) is misplaced. While *Sullivan* does support the notion that Section III of the MFRCA form constitutes the medical consultant's opinion, not the Section I findings, the Commissioner concedes that if Section III fails to describe the effect that Section I limitations would have on a claimant's ability or if Section III contradicts Section I, "[Section III] cannot properly be considered part of the substantial evidence supporting the ALJ's (RFC) finding." (Doc. 24) (citing *Carver v. Colvin*, 600 Fed. Appx. 616, 619 (10th Cir. 2015)). Here, Dr. Mellon does not discuss the nature or extent of any of the Section I limitations in Section III of his opinion, or the

effect that those limitations would have on his Section III opinion. (AR 115-126). The ALJ failed to discuss any of the limitations found by Dr. Mellon, other than mentioning that at the initial review stage, "medical consultants found no physical impairments and estimated moderate difficulties with daily activities, social interaction and concentration. Interaction with the public was considered to be the most limited." (AR 18 (citation omitted)). "Where a psychologist's Section III narrative does not contradict any Section I limitations **and** describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC." *Fulton v. Colvin*, 631 Fed.Appx. 498, 502 (10th Cir. 2015) (emphasis added). Dr. Mellon did not describe the effect the Section I limitations would have on Mr. Meese's RFC when he gave his opinion in Section III. Accordingly, the ALJ was not entitled to rely only on Section III of Dr. Mellon's opinion.

By failing to discuss the finding by Dr. Mellon of a marked limitation in Mr. Meese's ability to interact with the public, and to account for that marked limitation in the ALJ's RFC determination, the ALJ impermissibly picked and chose among Dr. Mellon's opinions to support a finding of "nondisability." *See Chapo*, 682 F.3d at 1292. The ALJ also failed to discuss or analyze the extent or degree of any of the moderate limitations found by Dr. Mellon, or the impact those moderate limitations would have of Mr. Meese's RFC. Finally, the ALJ omitted discussion of the weight he was assigning to Dr. Mellon's opinion, and did not explain the basis for such weight assignment. In sum, the failure by the ALJ to appropriately address Dr. Mellon's opinion when fashioning Mr. Meese's RFC requires that the ALJ's decision be reversed, and that the matter be remanded for further proceedings.

## CONCLUSION

The Court finds that the ALJ failed to properly consider the opinion evidence of Dr. Owen and Dr. Mellon. Accordingly, the Court finds that the Mr. Meese's Motion to Reverse and Remand to Agency for Rehearing should be granted. Mr. Meese also alleged that other errors were committed by the ALJ. The Court will not address those other alleged errors at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing (Doc. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE